Charles D. Swift, Esq.
Constitutional Law Center for
        Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX  75081
Phone: (972) 914-2507
Fax:     (972) 692-7454
cswift@clcma.org
*Pro Hac* Counsel for Defendant SALMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                           Plaintiff,<br><br>   v.<br><br>NOOR SALMAN,<br><br>                           Defendant. | No. 4-17-70058-MAG<br><br>**DEFENDANT'S MOTION, NOTICE OF MOTION, AND MEMORANDUM OF LAW IN SUPPORT OF CONDITIONAL RELEASE**<br><br>Date:    February 1, 2017<br>Time:    9:30 a.m.<br>Judge:   Magistrate Judge Donna M. Ryu |

TO:     UNITED STATES OF AMERICA, PLAINTIFF; BRIAN STRETCH, ACTING
        UNITED STATES ATTORNEY; AND JAMES D. MANDOLFO, S. WAQAR
        HASIB, SARA SWEENEY, ASSISTANT UNITED STATES ATTORNEYS

        PLEASE TAKE NOTICE that counsel for defendant, Noor Salman, hereby moves this

Court for an order allowing for her Conditional Release from Custody, pending trial. The motion

is based on this notice and motion, the following memorandum of points and authorities pursuant

to 18 U.S.C. § 3142(f),  and accompanying exhibits, all other applicable constitutional, statutory

and case authority, and such evidence and argument as may be presented at the hearing of this

motion.

**I.     Introduction**

Pursuant to 18 U.S.C. § 3142(f), Noor Salman, the Defendant, seeks to be released on bond into the custody of her mother, Ekbal Salman, or her uncle, Abdallah Salman, under any condition deemed necessary by this Court. The Defendant's proposed custodians are each willing to pledge their residences as security for their performance. In the event that the Defendant is required to reside in the Middle District of Florida, the Defendant's mother is willing to establish a temporary home in the Middle District of Florida and to serve as custodian while the Defendant awaits trial. In support of the Defendant's request the following is submitted:

**II.     Factual Background**

Noor Salman (Noor) is a thirty-year old American citizen of Palestinian descent. Noor was born in Richmond, California, grew up in Rodeo, California, and is one of four daughters of a small business owner.[1] Although she was raised in a Muslim home, Noor did not grow up with strong religious convictions. She did not cover, attend services, pray regularly, fast, or observe Ramadan.  Noor did not study Islam. She did not express any interest in politics.[2]

In school, Noor struggled with learning disabilities and was enrolled in special education classes, but was able to graduate from high school.[3] After high school, she attended Heald College, earning an associate degree in medical administration.[4] Despite completing an associate's degree in medical history, Noor's work history includes babysitting, working as a teacher's aide, and working as a cashier at her father's store and working at K-Mart.

[1] Adam Goldman, Orlando Gunman's Wife Breaks Silence: 'I Was Unaware', The New York Times (Nov. 1, 2016).
[2] *See* Declaration of Lauri Jaber
[3] *See* Declaration of Heather Hayden
[4] Heald College, a for-profit college that provided educational classes to mostly low-income students, closed after "a U.S. Department of Education investigation found that the company overstated employment prospects for Heald graduates by exaggerating job placement numbers." *See* Jill Tucker, *Corinthian, Heald colleges shut down abruptly*, San Francisco Chronicle (April 26, 2015, 8:30PM).

*UNITED STATES V. SALMAN*, CR 4-17-70058-MAG
MOTION TO FOR CONDITIONAL RELEASE        2

Noor is described by her family and friends as "simple," "obedient," "childlike," and who, most in life, wanted to get married and have children.[5] Noor had an arranged marriage at age nineteen to a man from her father's hometown.[6] While he allowed her to work at a daycare, he was physically abusive towards her.[7] In 2009, she was finally able to achieve a divorce and move back in with her mother, Ekbal Salman. During this time, Noor recuperated and began working at K-Mart. In 2011, Noor met Omar Mateen (Mateen) on an online dating site.[8] After a short courtship, the couple agreed to marry.[9] After they married, Noor moved from California to Fort Pierce, Florida, into a condominium that had been purchased by Mateen's mother.[10] Shortly after the marriage, Noor became pregnant.[11]

About six months into the marriage, and while she was pregnant, Mateen's behavior towards Noor became violent and abusive.[12] He was both verbally and physically abusive to her. He threatened to kill her if she left and that he would take custody of their son.[13] He also began abusing steroids, resulting in a significant weight gain and further destabilization of his moods.[14] Faced with an abusive husband who was rapidly succumbing to steroid abuse, Noor dedicated herself to her son. Noor friends observed that she was a "dedicated mother who always puts her son ahead of herself."[15]

---

[5] *See* Declaration of Shifa Itayem; Declaration of Rana Omar; Declaration of Ekbal Salman.
[6] Adam Goldman, Orlando Gunman's Wife Breaks Silence: 'I Was Unaware', The New York Times (Nov. 1, 2016).
[7] *See id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] Adam Goldman, Orlando Gunman's Wife Breaks Silence: 'I Was Unaware', The New York Times (Nov. 1, 2016).
[13] *See id.*
[14] Post mortem testing of Mateen showed that he was a long term steroid user. *See* Del Quentin Wilber, Orlando gunman was HIV-negative, and probably a long-term steroid user, autopsy shows, Los Angeles Times (July 15, 2016, 9:25AM).
[15] *See* Declaration of Rana Omar; Declaration of Shifa Itayem.

*UNITED STATES V. SALMAN*, CR 4-17-70058-MAG
MOTION TO FOR CONDITIONAL RELEASE         3

During the course of the couple's marriage Noor witnessed Mateen being questioned on multiple occasions by the FBI. On the first occasion Mateen insisted that she stay in the couple's bedroom with their infant son, and was only allowed out after Mateen's parents arrived. Noor later learned that the FBI interview was about statements of support concerning terrorist organizations, which Mateen had made while working as a courthouse security guard.  Mateen denied making these statements during the first FBI interview, but after learning from his father that the FBI had recordings of him making the statements, admitted to them during the second FBI interview. She was also with Mateen when an FBI agent texted Mateen and demanded that he come in for an interview concerning a community member who had gone to Syria. Noor also witnessed Mateen watching violent videos, from what appeared to be the Middle East, online.[16] When Noor attempted to question Mateen about his activities, he threatened her that she should stay out of his business

In the weeks immediately preceding the attack, Mateen's treatment of Noor altered dramatically.[17] For the first time in the couple's marriage, he agreed to take a family trip to California so that Noor could visit her mother and family.[18] He allowed her to get a driver's license. He also purchased an engagement ring and earrings.[19] He provided her with $500 in spending money with which she could purchase gifts for her family and clothes for herself.[20] Prior to these expenditures, Noor had been provided an allowance of approximately $20 per week. When Noor questioned where the money was coming from, Mateen showed her a letter from the Criminal Justice Standards and Training Commission indicating that he was "now

---

[16] *See id.*
[17] *See id.*
[18] *See id.*
[19] *See* Adam Goldman, Orlando Gunman's Wife Breaks Silence: 'I Was Unaware', The New York Times (Nov. 1, 2016).
[20] *See id.*

eligible to enter a law enforcement basic recruit training program," and told her that now things would be different.[21]

On June 11, 2016, Mateen came home from work as a security guard around 3:00pm.[22] He informed Noor that he had purchased the tickets for their trip and that he wanted to take their son out for a treat.[23] After going out, Mateen informed Noor that he was going out for the evening, but that she could use the family car because he was going to use a car that he had recently rented.[24] Noor asked him to stay because she hoped that they could spend the evening together as a family.[25] However, Mateen insisted that he had to see a friend.[26] After Mateen left, Noor took her son out to Appleby's for dinner, and bought a shirt and Father's Day card for Mateen for Father's Day, which was the following week.[27]

On June 12, 2016, Mateen entered the Pulse Night Club with a semi-automatic weapon and killed forty-nine individuals, along with injuring fifty-three others.[28] During the attack, Mateen is reported to have made statements that he was a member of Hezbollah, he was inspired by an American suicide bomber with al-Nusra, and that he was attacking the Pulse Night Club on behalf of ISIS.[29]

---

[21] *See id.*
[22] *See id.*
[23] *See id.*
[24] *See id.*
[25] *See* Adam Goldman, Orlando Gunman's Wife Breaks Silence: 'I Was Unaware', The New York Times (Nov. 1, 2016).
[26] *See id.*
[27] *See id.*
[28] *See* Valerie Bauerlein, Cameron McWhirter, & Scott Valvert, Terror Shooting at Gay Nightclub in Orlando Leaves at Least 49 Dead, 53 Wounded, The Wall Street Journal (June 12, 2016).
[29] *See* Ben Norton, Orlando shooter supported conflicting Islamist groups that are fighting each other, FBI says, Salon (June 13, 2016, 6:00PM).

While Mateen was at the Pulse Night Club, Noor was at home, sleeping with her three year old son.[30] She was awoken by a phone call from her mother-in-law. Her mother–in–law told Noor that Mateen had promised to stop by their house that night because it was Ramadan but had failed to do so. She then inquired if Noor knew where he was.  Noor responded she did not know where Mateen was but she would try to call him.[31] Noor then attempted to call Mateen but got no answer, so she texted him "Where are you?" to which he responded "Do you see what's happening?"[32] She responded "No?" to which he responded "I love you, babe."[33] That was the last communication she had with Mateen.

Within minutes of receiving the last text, she was ordered outside of her home by the Fort Lucie Police Department.[34] She was searched and then placed, along with her son, in the back of a squad car. She was later transferred to the FBI's headquarters where she was questioned for approximately 18 hours.[35] Following the questioning, she was released by the FBI. After her release, Noor was kept under constant observation by the FBI.[36]

Initially Noor stayed with her in-laws.[37] Four days after the shooting, however, her aunt, Emtiyaz Adieh (Emtiyaz), came to Florida to take Noor to her home in Mississippi.[38] Prior to taking Noor to Mississippi, Emtiyaz informed the FBI of her plan and was told that the FBI had no objections.[39] While en-route to Mississippi, Emtiyaz realized that members of the news media

---

[30] Adam Goldman, Orlando Gunman's Wife Breaks Silence: 'I Was Unaware', The New York Times (Nov. 1, 2016).

[31] Ayman Mohyeldin, Pete Williams, & Ohil Helsel, Orlando Gunman Omar Mateen and Wife Exchanged Texts During Rampage, NBC News (June 17, 2016).

[32] Id.

[33] Id.

[34] Id.

[35] Counsel has repeatedly requested but not been furnished with copies of Noor's written and recorded statements.

[36] See Declaration of Abdallah Salman; Declaration of Emtiyaz Adieh.

[37] Declaration of Emtiyaz Adieh.

[38] See Declaration of Emtiyaz Adieh.

[39] Id.

*UNITED STATES V. SALMAN*, CR 4-17-70058-MAG
MOTION TO FOR CONDITIONAL RELEASE          6

were following her, so she called the Oxford, Mississippi FBI Office (Oxford FBI Office) and was instructed to go straight to their office and not go home.[40] When Emtiyaz and Noor arrived at the FBI Office, they were met by Emtiyaz's husband and three children.[41] Emtiyaz and Noor then drove home with Emtiyaz's family.[42]

In early September 2016, Emtiyaz called the Oxford FBI Office to inform them that she would be moving Noor to California so that Noor could stay with her mother.[43] The Oxford FBI Office informed Emtiyaz that she had clearance to do so, and that it had contacted the San Francisco FBI Office to let them know that Noor was moving to Rodeo, California.[44] Thereafter, Emtiyaz and Noor traveled to California accompanied by two FBI cars—one in front of their car and one behind—with a total of four FBI agents.[45]

When Noor arrived in California, she resumed living with her mother.  However, at the FBI's request, her family continued to inform the FBI of all of Noor's movements outside her mother's home.[46] Noor's uncle, Abdallah Salman (Abdallah), met with three San Francisco FBI agents and was asked to report all of Noor's movements to them, citing their concern for her safety.[47] Abdallah agreed and provided constant phone and text messages regarding Noor's movements to the FBI until she was arrested on January 16, 2017.[48]

Noor was charged by way of indictment, in which the United States charged her with aiding and abetting her husband, Mateen, with material support of terrorism, in violation of 18 U.S.C. §§ 2339B(a)(1) and (2), involving the loss of life, and obstruction of justice, in violation

---

[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *See* Declaration of Emtiyaz Adieh.
[45] *Id.*
[46] *See* Declaration of Abdallah Salman.
[47] *Id.*
[48] *Id.*

of 18 U.S.C. § 1512(b)(3). At her initial hearing, the government sought detention of Noor, proffering the seriousness of the crime and that she had foreknowledge of Mateen's intent to attack the patrons of the Pulse Night Club. Noor now comes before this Court seeking conditional release.

### III.     Analysis

In order to obtain a detention order, the government must demonstrate either: (1) by clear and convincing evidence that no conditions other than detention will reasonably assure the safety of any other person and the community, 18 U.S.C.S. § 3142(f)(2); or (2) by a preponderance of the evidence that detention is necessary to reasonably assure the appearance of the defendant at future court proceedings.[49]

In cases where "there is probable cause to believe that the defendant has committed an offense identified as a '[f]ederal crime of terrorism' under 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of ten years or more is prescribed, there is a rebuttable presumption that 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community.'"[50] In this case, Noor has been indicted on a federal count of aiding and abetting a listed crime of terrorism. Accordingly, the government enjoys at the onset a rebuttable presumption that no conditions will reasonably assure the appearance of Noor and the safety of the public.[51] That presumption "shifts a burden of production to the defendant," however, "the burden of persuasion remains with the government.[52] In short, the burden is on the Defendant to provide evidence that there are

---

[49] 18 U.S.C. § 3142(f); *United States v. Sabhnani*, 493 F.3d 63, 75 (2nd Cir. 2007).
[50] 18 U.S.C.S. § 3142(e); *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (citations omitted).
[51] *Id.*
[52] *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (citations omitted).

conditions which reasonably assure her appearance and assure the safety of the public.[53] Once she has done so, the burden shifts back to the government to persuade this Court that those conditions are nevertheless insufficient.[54]

The factors the Court is to consider in analyzing whether each side has met its burden of persuasion are set forth in 18 U.S.C. § 3152(g). These factors include: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.[55]

*(1) Nature and circumstances of the offenses charged*

Noor concedes that the primary charged offense, aiding and abetting the material support of terrorism, weighs against finding that any conditions absent detention ensure the safety of the public and her presence for trial. *See United States v. Sheikh*, 994 F. Supp. 2d 736, 740 (E.D.N.C. 2014) ("Congress itself recognized the serious nature of terrorism by specifically compelling courts to consider whether the alleged crime is a "Federal crime of terrorism." The allegation of such a crime weighs heavily against the defendant." (citations omitted)).

Apart from the serious nature of the allegations, which in and of themselves are not conclusive, the remaining factors support finding the conditions proposed by the defense are sufficient to protect the public and ensure Noor's presence for trial.

*(2) Weight of the evidence against the person*

The return of the indictment conclusively determines the existence of probable cause. *See United States v. Sheikh*, 994 F. Supp. 2d 736, 739 (E.D.N.C. 2014) ("It has long been settled by

---

[53] *See United States v. Sheikh*, 994 F. Supp. 2d 736, 739 (E.D.N.C. 2014).
[54] *See id.*
[55] 18 U.S.C. § 3142(g).

*UNITED STATES V. SALMAN*, CR 4-17-70058-MAG
MOTION TO FOR CONDITIONAL RELEASE        9

the Supreme Court that a grand jury indictment conclusively determines the existence of probable cause." (citations omitted)). Apart from the presumptive existence of probable cause, the indictment in this case provides no indication of the strength of the government's case.

In order to establish that Noor aided and abetted Mateen's violation of 18 U.S.C. § 2339B(a)(1) and (2), the government will have to prove that (1) Mateen provided himself as personnel for ISIS; (2) Noor aided, counseled, commanded, induced or procured that person with respect to at least one element of Mateen's provision of material support to ISIS; (3) Noor acted with the intent to facilitate Mateen's providing himself to ISIS; and (4) Noor's actions occurred before Mateen completed providing material support to ISIS.[56]   Apart from securing an indictment, the strength of the government's case is questionable.

The government necessarily alleges that Mateen, in providing material support to ISIL, furnished himself as personnel. The government maintains this even though its investigation could not establish direct ties between Mateen and ISIL prior to the attack. *See* James B. Comey, Director, Federal Bureau of Investigation, Press Briefing on Orlando Mass Shooting at the FBI Headquarters (June 13, 2016) (stating that after combing through Mateen's past, "we see no indication that this was a plot directed from outside the United States, and we see no indication that he was part of any kind of network"). Moreover, Mateen reportedly attributed his actions to multiple terrorist organizations—those even in conflict with one another.

Even more tenuous is the government's proffer that Noor was aware of Mateen's plan to attack the Pulse Night Club. The government's proffer of knowledge is belied by Noor's actions on the night of the attack.  After Mateen left she called her family and told them that she, along with her son and Mateen, would be coming to California. She then took her son out for dinner,

---

[56] Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit, 5.1 Aiding and Abetting (last updated Dec. 2016), *available at* http://www3.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Criminal_Instructions_2016_12_0.pdf.

and bought her husband a Father's Day card and a gift. She took her son home, put him to bed and went to sleep.  When she was awoken by her mother-in-law's phone call, Noor had no idea where Mateen was. In an effort to discover his whereabouts she first tried to call him and when he did not answer, she texted him asking "Where are you?" These are not the actions of someone with knowledge of her husband's murderous plans.

Finally, even if the government can establish knowledge, they must also establish that Noor aided Mateen. However, it was Mateen, and not Noor, who determined to attack the Pulse Night Club, Mateen who chose to drive to the club, Mateen who purchased the weapon and ammunition, and Mateen who alone carried out the attack.  News sources have erroneously reported that Noor drove Mateen to the Pulse Night Club on a purported scouting trip sometime before the attack.[57] The defense proffers that the evidence will show that the purported scouting trip occurred while the family was on their way home from babysitting the children of a relative, that Mateen chose to drive into Orlando and to pass by the Pulse Night Club, and that Noor, who did not possess a driver's license at the time, was at most a reluctant passenger who wanted to go home. The news media has also reported based on sources from the FBI, that Noor was present when Mateen bought ammunition at a local Walmart.  The defense proffers the evidence will show that Noor believed they were going to Walmart to get copies of keys made for their condo, and she was shopping for a toy for their son when Mateen went to the sporting goods section to purchase the ammunition. When Noor found Mateen in the sporting goods section, she asked him why he was purchasing the ammunition. Mateen explained he needed it to train for his job as a security guard. Although Noor may have been present when Mateen was possibly making

---

[57] Matt Apuzzo & Eric Lichtblau, After F.B.I.'s Inquiry Into Omar Mateen, a Focus on What Else Could Be Done, The New York Times (June 14, 2016).

UNITED STATES V. SALMAN, CR 4-17-70058-MAG
MOTION TO FOR CONDITIONAL RELEASE        11

preparations, mere presence alone is insufficient to establish aiding and abetting.[58] In sum, although the weight of the evidence is the least important factor, it nevertheless weighs in Noor's favor. [59]

*(3) History and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history*

Noor has been described by her family and friends as "respectful" and "well mannered."[60] She has also been observed to be a dedicated mother to her son, spending much of her time caring for him.[61] Noor's marital life has been the antithesis of this, as she has suffered two abusive husbands, one of whom she could not escape. Noor has no history of alcohol or drug abuse, and has no criminal history.

Noor has strong family and community ties. She and her family have made the United States their home. Her family, including her mother, sisters, and uncle, live in California. Noor has shown herself to have strong family ties because after difficult periods in her life, most notably after the divorce from her first husband, she moved back in with her family. Noor has also shown herself to have strong ties to the community, as she did not flee the country once her marital status came to light after the Pulse Night Club attack. Instead, she moved in with her family and continued caring for her son.[62] It would be unreasonable to assume that an individual, who would not leave an abusive relationship due to her commitment to her son, would suddenly abandon him in order to protect herself from incarceration.[63] Indeed, Noor knew and understood that the

---

[58] *United States v. Natel*, 812 F.2d 937, 941 (5th Cir. 1987); *Seriales v. Harrington*, No. 1:09-cv-00355-BAM (HC), 2012 U.S. Dist. LEXIS 11814, at *103 (E.D. Cal. Feb. 1, 2012).
[59] *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).
[60] *See* Declaration of Ekbal Salman; Declaration of Shifa Itayem; Declaration of Rana Omar.
[61] *See* Declaration of Rana Omar.
[62] *See* Declaration of Emtiyaz Adieh; Declaration of Lauri Jaber.
[63] *See* Declaration of Rana Omar; Declaration of Shifa Itayem.

government was investigating and surveilling her for seven months before the Indictment issued, but she did attempt to flee.

Noor's strong family ties are also evident in the fact that her mother and uncle are willing to act as her custodian should the court require a third party custodian to release her.[64] They are also willing to secure their homes as a guarantee of Noor's presence at future hearings.[65] Noor's mother is also willing to temporarily relocate to Florida if the court conditions Noor's release on Noor staying in Florida.[66]

*(4) Nature and seriousness of the danger to any person or the community that would be posed by the person's release*

In this case, it is clear Noor poses no danger to any person or the community. Any threat she might have posed is solely a function of Mateen, and that threat has been removed. Unlike others charged with material support of terrorism, Noor does not adhere to a violent religious philosophy. In contrast to reported material support cases, the government proffers no evidence that Noor expressed a desire to support ISIL or approved of her husband's actions. Noor's religious views have no political bent. Indeed, she is not particularly religious at all.[67] Ironically, ISIL's reported views towards women condemn Noor's lifestyle as apostate. Her lack of extreme religious views is confirmed by her lifestyle—she does not adhere to the conservative dress, she does not attend congregational prayers or services, she does not express an interest in political activities abroad or the need to defend Islam.

Noor's connection to the crime does not stem from her desire to provide material support to ISIL, but rather her tragic marriage to an individual who allegedly desired to support ISIL among other terrorist organizations, by attacking the patrons of the Pulse Night Club. In this case, the

---

[64] *See* Declaration of Ekbal Salman; Declaration of Abdallah Salman.
[65] *Id.*
[66] *See* Declaration of Ekbal Salman.
[67] *See* Declaration of Lauri Jaber.

*UNITED STATES V. SALMAN*, CR 4-17-70058-MAG
MOTION TO FOR CONDITIONAL RELEASE      13

1  Court should bear in mind the condition of her marriage when determining whether the

2  circumstances of the offense charged weigh in favor of detention. [68]

3  Noor was physically and financially abused at the hands of Mateen. He isolated her from her

4  family by threatening her that he would take custody of their son if she were to leave him.

5  Noor, unlike other terrorism defendants, was only present as a wife, and an abused wife at that.

6  The removal of the perpetrator husband mitigates the danger posed by the serious nature of the

7  crime.

8  Moreover, the fact that Noor has been under investigation from the onset and she, along with

9  her family, has cooperated with the FBI to an extraordinary extent, demonstrates that release to

10 her family does not pose a danger to any person or the public and that she is not a flight risk.[69]

11

12 The recent case of *United States v. Meek* delineates the difference between a person who

13 was aware of the threat posed by a perpetrator of a mass shooting and the actual perpetrator of a

14 mass shooting.[70] In *Meek,* the defendant was similarly alleged to have known of Dylan Roof's

15 plan to enter a predominantly African American Church and shoot the occupants due to his white

16 supremacist beliefs. Shortly after the attack, the FBI questioned Meek where he allegedly

17 provided false statements regarding his role. Subsequently, Meek was charged by way of

18 indictment with misprision of a felony and false statements.[71] In that case, despite Meek's

19 admitted foreknowledge of a horrific crime of mass shooting, the court found that there were

20 sufficient grounds to establish conditions of release.[72]

21

22

23 [68] *See* Declaration of Jacquelyn Campbell "Ms. Salman scored in the Extreme Danger range, the highest level of danger from and abusive intimate partner."

24 [69] *See* Declaration of Emtiyaz Adieh.

25 [70] *United States v. Meek*, 2:15-cr-00633-RMG, Doc. No. 36 (D. SC. Oct. 22, 2015).
[71] *Id.*

26 [72] The conditions of the release were a bond of $25,000 secured with standard conditions, surety required; home detention with electronic monitoring; requirement to live with his grandparents

27 with no contact with his brothers or girlfriend; inability to obtain his passport; performance of a mental health evaluation and participation in in-patient treatment. *Id.*

28

*UNITED STATES V. SALMAN*, CR 4-17-70058-MAG
MOTION TO FOR CONDITIONAL RELEASE        14

**IV. Conclusion**

Wherefore Noor prays that this honorable Court find that her proposed conditions of release, namely to be released into her mother's custody with her appearance further secured by real property and GPS monitoring, along with such other terms as the Court determines, are sufficient to permit release under 18 U.S.C. § 3142(c), and order the same.

Respectfully submitted,


*/s/ Charles D. Swift*

Charles D. Swift, Attorney
Constitutional Law Center for Muslims in America
833 E. Arapaho Rd., Suite 102
Richardson, TX 75074
cswift@clcma.org
(972) 914-2507

Dated:  January 31, 2017

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of Notice of Motion, Motion, and Memorandum of Law in Support of Motion for Conditional Release was electronically filed  and served on the Court's electronic filing system:

DATED this 31st Day of January, 2017.

_____*/s/ Charles D. Swift*_____
Charles D. Swift, Attorney
833 – E. Arapaho Rd., Ste. 102
Richardson, TX  75081
Tel: (972) 914-2507
Fax: (972) 692-7454
cswift@clcma.org